Case No. 14-8089, Initiative and Referendum Institute et al., Appellants, Nebraskans for Limited Terms et al. v. United States Postal Service Mr. Spitzer for the Appellants, Ms. Broswell for the Appellate Mr. Spitzer for the Appellant I would like to begin with the proposition that this Court's 2005 judgment made the plaintiffs prevailing parties, because if that's true, then there's no need for the Court to consider the 2003 District Court decision, which we argue made the plaintiffs prevailing parties up to that point. When this case was filed, there was a Postal Service regulation that, in the words of this Court in the 2005 opinion, quote, and allowed them to collect signatures on perimeter sidewalks. I don't think the government denies or could deny that this was a change in the legal relationship between the parties. But was that change on the basis of this Court's order? Right. Their position is the change was voluntary and not the result of this Court's order. But I think that's not accurate, and I think the best proof of that, at least the shortest proof of that, is from the Postal Service's own mouth when the case got back to the District Court on remand. And they said, in a memorandum to the Court, quote, This was in response to our request for an injunction. Plaintiffs offer no evidence that would suggest that USPS would blatantly ignore the Court of Appeals' decision. In other words, the Postal Service understood that the amendment to the regulation was compelled because not to have amended it would be blatantly ignoring this Court's decision. I think they say that, as of 2002, they had come to the conclusion that they, if not sooner, they had come to the conclusion they were not going to enforce the regulation on gray sidewalks or to bar informational-only soliciting anywhere. And so that there was, in essence, a policy statement, interpretation, clarification, whatever you want to call it, that they had come to. And so that, I think, is their position, that they had come to that recognizing, as a result of your lawsuit, perhaps, and probably recognizing that they couldn't do that. How do you respond to that? I think that is their position, Judge Kavanaugh. And the problem with it is that the change of position was known only to a handful of people. It was mentioned to the district judge in a motions hearing. So Postal Service counsel knew about it. Plaintiffs' counsel knew about it. The district judge knew about it. Isn't that true even after summary judgments entered, and that's part of your continuing claim, was that the notice was just sent internally within the Postal Service and the notices that were posted publicly weren't changed? Yes, but that's, I think, a subsequent stage to Judge Kavanaugh's question. In 2002, when the Postal Service apparently internally made the decision about non-enforcement, they didn't tell the postmasters. There were 34,000 postmasters around the country who had no way to know that there was this, quote, new position or new interpretation. What they had was the regulation in the Code of Federal Regulations posted on the bulletin board at every post office next to the 10 most wanted, where postmasters could see it, where people who might want to petition could see it. This new position was a secret except to the district judge and counsel. And even if we had notified our clients, which I'm sure we did, what the post office said, we're talking about organizations like Term Limits USA and Humane Society that have thousands of volunteers out around the country. There was no way to tell them, and more important, there was no way to tell the postmasters, just ignore that regulation that's posted in the lobby. The Postal Service has a new position. And this may not answer much of anything, but I'm just curious whether we know that, whether we know whether the regulation was enforced after 2002 against anyone on a gray sidewalk or to bar informational only solicitation. Do we know the answer to that? We've cited in our reply brief three instances verified by declarations in the record, two declarations and one reported decision from Massachusetts. And I must say I don't remember right now the exact dates of those actions, but I believe they were in the relevant time period where postmasters continued to enforce. And in the Massachusetts case, it was long after the bulletin had been published. And also important is the fact that the Postal Service explicitly reserved the right, in its colloquy with Judge Roberts and in its summary judgment memorandum, and even in its brief to this court in 2004, explicitly reserved the right to change its position again. They said if we, in their brief to this court in 2004, they said that they could not commit never to revisit the position. That's a quote. So in other words, this non-enforcement policy was a matter of grace. It was not a matter of recognition of their First Amendment obligations or the First Amendment rights of the petitioners. And so when this court said your enforcement position is very nice, but you've got to do more than this informal bulletin, which is sitting on a shelf in a back office somewhere at the post office, the court was telling them they had to do something. And they recognized that, and they changed the regulation. Well, I know there's ambiguity, as you're well aware, I think, in the 2005 opinion, because it does formally at least remand for the determination. And I think your position with some force is it was preordained at that point what was going to happen on the remand. And then the court also said, but by the way, Postal Service, wink, wink, you could change the regulation and this would be over. As you know, Judge Kavanaugh, we think the case is quite parallel to the Seventh Circuit's National Rifle Association case where the Supreme Court remanded for further proceedings just as this court did in our case. And the Supreme Court didn't say but could have said. As this court said, the Postal Service can pretermit further proceedings by amending the regulation. And they did. The Supreme Court didn't say but could have said in the NRA case, well, of course, the city of Chicago could pretermit further proceedings by repealing this gun ordinance. And had they said it, I don't think it would have changed the result in the Seventh Circuit. Whether the Court of Appeals or the Supreme Court gave a hint or didn't give a hint can't matter. The defendants in both of those cases got the message and beat the district court to the punch, in effect, by obviating the need for an injunction. And, indeed, that's what Judge Roberts held on remand, is that our request for injunctive relief had become moot because the Postal Service had amended the regulation. Now, as of 2005, the bulletin was out, right? Out and about, so to speak. Right. But your point is that... Our point is that the bulletin was not enough, and this court so held in 2005 that... Well, it held that the regulation, it's interesting, it held that the regulation, as I read it, was not susceptible to such a limiting construction. With respect to gray sidewalks, that's exactly right. But that's not saying that the limiting construction slash enforcement policy was not in place. The enforcement policy was in place, but this court explicitly pointed out in the 2005 decision that neither a member of the public nor a postmaster would know about that enforcement policy when looking at the regulation posted on the bulletin board in the lobby of the Postal Service. Right. And this is a First Amendment claim, so that's quite significant. That's not giving the relief. This court agreed that it was quite significant, and I think it was completely inevitable that the Postal Service had to amend the regulation on remand. There were two varieties of injunction that might have issued on remand. Right. I think... I'm sorry to interrupt, but I think you're right about that. It's just an interesting question about what the significance of an enforcement policy is before the litigation is final, which raises... You can get pretty deep into that question and not come out for a while. Anyway, that's my comment on that. The Postal Service was certainly free. Assuming they understood what their First Amendment obligations were going to be, they were certainly free at any time to amend the regulation. Suppose the enforcement policy had been posted everywhere, and so it was clear you're good to go on gray sidewalks and you can do informational-only soliciting anywhere. I'm not sure what the panel of this court would have done with that in 2005. Perhaps they would have said that's good enough. I doubt it because, after all, the Code of Federal Regulations was still the binding law. The Postal Service might have made... Well, I think they would have said that's not good enough in terms of regulation. You still need to change the regulation. Right. But the question is the significance. You've relied a lot on, when I've asked a couple of these enforcement policy questions, that it wasn't really communicated sufficiently, and Judge Pillard raised that too, to the people who would want to take advantage of the area. Or to the postmasters, who are the ones who pick up the telephone and call the police to come and arrest somebody. These postal bulletins, it's a little internal brochure that comes out, I think, bimonthly, and they get filed in a loose-leaf binder in the back of the post office somewhere, and each one consists of... This wasn't a special alert that was sent to postmasters. This was one page of a 20- or 30-page biweekly bulletin. I don't read every page of every bulletin I get, and who knows how many postmasters were even aware of this. Why wasn't it enough that the Court of Appeals affirmed on the as-applied challenge? I mean, there was further fact-finding needed for the facial challenge, but you got court-ordered relief in that regard in 2005, and I'm assuming that's why that's the end of the period for which you're requesting fees. Well, that's right. That's the end of the period because proceedings after that eventually led to this Court's opinion in 2012, which we did not win. Right. On the facial side, but you had one in the Court of Appeals. Yes. And as-applied challenge. No, I think that's right, and this Court issued a judgment, and following the judgment issued a mandate that required the district court to act in accordance with this Court's opinion, as I think we tried to explain in our brief. On remand, had the Postal Service not gone ahead and amended the regulation quickly, an injunction was inevitable. Either an injunction striking down the entire regulation on its face because gray sidewalks were a substantial number of all sidewalks, but at a minimum, a regulation making the change that the post office eventually did make in their regulation, and this Court has held that even a declaratory judgment is sufficient for Buckhannon purposes, consolidated Edison against Bodman in 2006. If a declaratory judgment, which is not an injunction, which could only be enforced in a two-step process of going back to the court and then getting an injunction and then enforcing the injunction, if that's enough, I think that's the same here. Had the district court ignored this Court's decision, we might have had to come back and get this Court to tell the district judge to issue an injunction and then enforce it. But this Court's opinion was, I think, the equivalent of a declaratory judgment. It declared what the Constitution required. And that was important because in some sense, I guess, I don't know whether you would agree with this, the proceedings in the district court was almost in the nature of a sort of consent decree as a condition of entering summary judgment for the Postal Service. But under Buckhannon, that kind of court imprimatur on an agreement is enough. And then you only get the actual holding by court when you come up to the Fifth Circuit and the 2005 opinion says, yes, in fact, that was what the law compels on the as-applied challenge. I think that's right. Well, I'm not sure that is. I'm not sure it was a consent decree as opposed to a unilateral enforcement policy changed in the wake of the lawsuit. I mean, that is a tricky question itself. I think we all agree that had they actually changed the regulation, they would have mooted the case and we would not have been prevailing. Right. If they had publicized and changed to what they said their enforcement policy was circa 2002, that would have ended that part of the case. Right. But not only did they not do that, they explicitly reserved the right to change their enforcement policy. And would we have had a right case at that point? Would we have had to wait until they, in fact, did change the enforcement policy? Well, she had a whole other part of the case, obviously, which kicks around until 2012, right? You wanted to be able to collect signatures. I guess what I'm saying about this sort of consent decree analogy is that to the extent that it's a condition of Chief Judge Roberts entering some agreement for the Postal Service, he's kind of saying, like, I'm acknowledging and accepting that as binding, and I'm only issuing this because you've undertaken that. Well, I think the analogy to a consent decree is right. A consent decree, after all, is entirely voluntary. No one forces a defendant to sign to agree to a consent decree. And so it is quite parallel, I think, to what happened here. The Postal Service said, we are willing to make these changes. The court then ordered them to make those changes by sending out a bulletin. We're now shifting to the 2003 order, but if a district judge issued an injunction saying to a Federal agency, thou shalt not enforce Section 2B of your regulation, I think everyone would agree that that was a Buckhannon-compliant action. It was an order that changed. And what the judge did here, so if the injunction said, I'm ordering you to change and I'm ordering you to inform your agents and employees to make that change, that would qualify. Here it was the same thing except in the opposite order. He said, I'm ordering you to inform your agents and employees to adhere to this change, which you've agreed to make and which I'm now ordering you to make. And so I think it is quite analogous to a consent decree. But as I said at the beginning, I think the court can avoid the need to write about the 2003 order if it agrees with us that the 2005 decision, which encompasses all of our work up until 2005, also made us prevailing parties. Had the Postal Service refused to publish that bulletin after the court's order in 2003, would you have had any remedy? Yes, I think a court order is a court order. And I'm not sure if we would have gone in and moved for contempt. I think maybe more likely we would have gone back to Judge Roberts first and said, Your Honor, they're not complying with your order. Enter an injunction more clearly requiring them. And had they not published it, of course, then we could have gone back and said, Well, Your Honor, since they're not willing now to really make the change that they said they were willing to make, you've got to rule on the merits of the regulation as published. And I think Judge Roberts makes it pretty clear in his memorandum opinion of December 31, 2003, that in that case he would have ruled for us and not for them. So those were two possible avenues. But I don't think one can reasonably say that his order and opinion of 2003 upheld the regulation that we had challenged, the regulation that was published. He upheld it only because these changes were made, and he incorporated that change in his opinion and in his order requiring them to direct their employees to change their enforcement policy. The fact that they were agreeable to doing that is no different from a defendant saying we're agreeable to a consent decree. On 2005 opinion again, your position is that the court's opinion effectively forced the Postal Service to change the regulation. Effectively and inevitably. That's a better word, inevitably. I like it. And I think it's exactly the same as NRA. And this court, of course, has itself said that when a litigant achieves a victory in the court of appeals, even though there's a remand, if the remand will inevitably lead to relief, that's good enough to be a prevailing. Did you challenge? Well, never mind. We haven't gotten, I see my time's up, we haven't gotten at all to the question of substantially justified and whether there needs to be a remand. And I just wanted to provide the court with one citation that's not in my brief that I came across two days ago and alerted Ms. Braswell. But Jacobs against Schiffer, 204, Fed 3rd, 259 at 264 is a case precisely on point on that issue, where there was a remand in an equal access, there was an appeal in an equal access to justice case. The court decided that the district court had made an error of law in its decision on substantially justified and said because the question of whether the department's position was substantially justified can be answered as a matter of law, a remand is unnecessary at page 264. So there is precedent from this court precisely on that point that a remand is not necessary on substantially justified. Thank you very much. Thank you. Thank you. May it please the court. Judge Kavanaugh, I believe, starts the analysis at the appropriate place, which is not with this court's 2005 decision, but what happened leading up to that decision. And it's important to look at the facts of the Postal Service's position and when it changed its position. And the record in this case indicates that the Postal Service took the position that then was reflected throughout the rest of the litigation back in 2002, at the latest in 2002. In fact, when we filed our motion for summary judgment in February of 2002, we stated the two points that are at issue here, which is, one, that the regulation would not be applied on grace-type sidewalks, which, again, is a small subset of exterior sidewalks outside of postal property, and, two, that there could be solicitation or information seeking signatures but not signature gathering. But put aside the communication issue because that's a whole separate box. But as of 2005, for this court, that wasn't good enough that there was just an enforcement policy in place because the court said the regulation is not susceptible to that limiting construction. So inevitably, is the word counsel used, which I think is a correct word there, inevitably the Postal Service had to change the regulation in response to that court decision. How do we deal with that? I don't think it was inevitable, and I think it's important to look at this court's 2005 decision where the court said there's a format problem. The court recognized that the Postal Service, the court used the word format. The court recognized that the Postal Service had not been applying the regulation on grace sidewalks since 2002 and had not been prohibiting pure solicitation of signatures since 2002. But the court said the problem is it's not in your regulation. You announced this change by way of a bulletin instead of in your regulation. So there's a format problem because it doesn't work. It's more than a format, though, because it has legal impact. As counsel said, if it's just enforcement discretion, that could be changed by the next administrator, what have you, whereas if the regulation's changed, that has a different legal impact. Well, the regulation could be changed as well, and actually the Postal Service is not subject to the APA's requirement of notice and comment rulemaking. So in essence, a regulation could be changed almost as quickly as a postal bulletin, and with respect to postal employees, they are bound just as much by a postal bulletin as they are by a regulation. But one thing I want to correct is... But let me try to drill into this a little more. They wanted the regulation changed, not just the enforcement policy, and the court granted them that relief. So there was court-ordered relief. Let's put aside the inevitably thing for a second. We can talk about that separately. But there was court-ordered relief to change the regulation that just having the limiting construction-slash-enforcement discretion wasn't good enough. Your Honor, I don't think we can really say that they wanted regulation changed. What they wanted was to be able to gather signatures on all exterior postal property. That's what appellants wanted from the very beginning. But they already knew they could do that. They knew that as of 2002. So unless you're saying they were engaged in senseless litigation... No, Your Honor, they didn't. It's important to understand that gray sidewalks are only a subset of the exterior postal property on which they were seeking to be able to gather signatures. Maybe I'm misunderstood. They lost that issue. They lost that issue. But as of 2002, they knew that gray sidewalks were open, and they knew that they could do informational-only soliciting on the interior parts, which is the relief they ultimately get in 2005 by the court decision. What's different about the 2005 court decision is that it's not just a statement by the Postal Service. It's an actual court order that you change the regulation. Well, I don't think that this court's 2005 decision required us to change the regulation. Right, and that may be what it comes down to. And, in fact... But that's a problem for you. We believe that one course of action the Postal Service could have done was to post its bulletin right next to the regulation in all the post offices and to put it up on the Web. Just to confuse people, that would be... No, it doesn't. That's the problem, is that this is a First Amendment case, and there's a concern about chill. And you may have been willing to change the policy, but in terms of the interest that the First Amendment protects, the free speech interest, you had not changed it until that old, overly restrictive regulation was corrected. And certainly, I mean, putting in the federal regulations at least allows a member of the public to say this is now the law. It seems to me that's a very important difference between the situation in which the Postal Commission is saying, trust us, we're not going after any of these people. And the public, in advance, actually has a basis to know that. Isn't that quite significant? But I don't think... But it's all about the public knowing. And I don't think that we had to change the regulation to put the public on notice because the postal bulletin specifically says the regulations do not apply to... But do you agree that the... I'm sorry to interrupt. Do you agree that the regulation was still posted in many post offices around the country? It was. But what I'm saying is that... Yeah, well, that's a problem for Judge Pillard's line of inquiry, I think. No, what I'm saying is that as a result of this Court's decision in 2005, which was concerned with notice to the public, the Postal Service didn't have to change its regulation. We believe it could have simply posted its bulletin next to the regulation in all the post offices. And if I disagree with you on that... If you disagree with me on that, I don't think this still makes appellants a prevailing party. But even that is finding injunctive relief that was part of what they wanted. I don't understand why, even had you been able to do that, you think that would disentitle the plaintiffs to fees based on the 2005 decision. It seems like you've just conceded a fact that entitles them to fees. Absolutely not, Your Honor. If you go back to the law on what constitutes a prevailing party, Buchanan said there has to be court-ordered relief. Exactly. There was no court-ordered relief. If that's bulletin in public, whether it's a regulation change or posting of the bulletin, they're telling you to make that clear. Or they, by their opinion, are making it clear. They did not tell... What they said was they remanded the case to the District Court to have the District Court engage in a factual determination as to whether, because on the face of the regulation it applied to gray sidewalks, whether or not a substantial number... That meant that a substantial number of postal properties were public forum and had prohibited speech that shouldn't have been prohibited. So it was still... If this Court had concluded in 2005 that the as-applied challenge was only to gray sidewalks, it could have ordered the District Court to enter an injunction prohibiting the Postal Service from applying its regulation to gray sidewalks, which would have been problematic because the Postal Service wasn't doing that. So really what the Court could have done was to order the Postal Service to change its regulation. But again, the Postal Service could have put the public on notice in different ways. What's important in the cases when they're looking at prevailing party status is what did the party want and what did the party achieve? And here the plaintiffs all along wanted to be able to gather signatures on all exterior postal property. They did not achieve that. They wanted more than that, it appears, from looking at the whole record, and you know it well. But it seems like the key now for me, as I think about it, is the sign or the posting in the post office that tells people something that maybe was wrong, or not just maybe, was wrong, because it suggested that they couldn't do the informational-only soliciting and couldn't do the gray sidewalk. Now, if they were really astute, they would realize, oh, it's not being enforced. But if they just looked at the regulation in the post office and followed that, they would not be aware of that, and they would not be able to do the informational-only soliciting. Well, Your Honor, this case... And then after the court decision, this is the big part, the kicker, after the court decision, that's changed, and it's because of the court decision. But that's a catalyst theory, which under Buchanan the Supreme Court said is not a viable theory. In other words, the fact that the Postal Service took this court's suggestion in 2005... by looking at the National Rifle Association analog that was cited for the Seventh Circuit. But the Seventh Circuit case, the whole case, ended. I mean, you know, after the Supreme Court decision... Right, but this case only continued because there were different chunks of this case. In other words, the collection part. So obviously the case continued in that respect. No, this case continued on the forum basis, and this case continued with a declaration from this court saying to look at how many gray sidewalks are out there to see whether or not it's a substantial number such that the regulation would be set aside. So there was no order by this court that required the Postal Service to change its position. And this has really been recast, Your Honor, with Pelham's motion for fees. Somehow now it's become, oh, we wanted a change in the regulation. That's not what they sought with this case. They wanted a change in conduct. And if you look at decisions by courts looking at prevailing party and what constitutes prevailing party status, it's a change in conduct by the defendant. It's not a format change in how they're putting out notice, but to get the defendant to change something that it's doing. And here, by 2002, the Postal Service was not enforcing its regulation on gray sidewalks. And by the way, appellants are incorrect when they say this had not been transmitted to postal employees because with our motion for summary judgment, we filed a declaration from Fred Hintonock, who was the manager of customer relations with the Postal Service, who said they were advising postal managers not to apply the prohibition to gray sidewalks. So that information verbally had gone out to postmasters. And, in fact, the district court cited that declaration. There were a couple of instances, or at least one, where it was still miscommunicated, right? Yes, there's a case. Well, those actually, I can respond to those three, Your Honor, because two of them occurred in 2002. Those were declarations that were done in 2002. And the citation to Delgado is completely wide of the mark because that was a campaigning issue. And the individual there was trying to pass out leaflets as part of campaigning, which is prohibited by a separate part of the regulation. So that's completely beside the case in terms of showing that there was any miscommunication with postmasters. So the record is- I'm sorry. I'm sorry, Judge Brown. Please finish. Well, no, I was just going to finish the thought that the record is clear that as of 2002, before there was any court order or court decision, the Postal Service was no longer enforcing its regulation on gray sidewalks, and it all along had allowed leafleting and verbal solicitation. Okay. Do you distinguish here between the plaintiff's spatial challenge and the as-applied challenge? We do. And actually, their as-applied challenge was not a challenge to the regulation as applied to gray sidewalks. Their as-applied challenge was a challenge to the regulation as it applied to 12 different named postal facilities. So they never in the course of this litigation said that we want the regulation set aside just as it applies to gray sidewalks. They always had a global view of the regulation and a global view of the exterior postal property. Does that matter if you win but only win part? No, you can still be considered a prevailing party if you win in such a way that the defendant is required to change its conduct. Right. And we go back to the issue of having to change conduct as opposed to how you publicize what your conduct is. And our position is that by changing the regulation, you are only dealing with what this Court found to be a format issue in how we publicize what our position is. I just, I mean, I'm just repeating myself, but I still don't understand how you can characterize that as only a format issue and not a change in conduct. Because in the First Amendment context, given CHIL, the communication of your change in policy is a vitally constitutionally important part of your compliance. You are not in compliance with the First Amendment if you have only said as a matter of our enforcement discretion, we will not enforce. That isn't in compliance with the First Amendment as I understand it. So maybe I'm missing something about the distinction that you're trying to make, but I'm still stuck on that. And I understand that, Your Honor. And there's no question that CHIL is a part of the First Amendment. We recognize that. But I go back to, I guess, two points. One, there had been no factual development up to the time of the 2005 decision that individuals were being CHIL'd with respect to this grace type of sidewalks. And because nobody... Is there any First Amendment case that requires such a showing? Well, there has to be something that would reasonably allow the court to believe that CHIL was occurring. How about the signs in all the post offices? Well, but here's my point about these grace sidewalks. The way the grace sidewalks look is that... They look like a public sidewalk. Well, they look like a piece of the public sidewalk. In other words, you're walking along, you have public sidewalk here, public sidewalk here. To the visual eye, it continues without any break. The post office is located right here. And in some cases, and not all, the postal service happens to own that little chunk of sidewalk. I think there's a question as to whether or not any member of the public would think that that little piece of sidewalk was owned by the postal service. Because frankly, many people in the postal service didn't know that when this case started. And it wasn't until we got surveys and started looking at it, which frankly is partly how this evolved into a change of position, is that the postal service looked at the surveys, realized, oh, we actually own some of this sidewalk that looks like a city sidewalk. And that's how its position evolved into, all right, we're not going to enforce the regulation there because nobody would be able to know that that's owned by the postal service as opposed to the city sidewalk. So I think, again, on remand, all of this was still in flux. I think there was a legitimate argument that we could have made that they weren't being chilled because nobody would have known that these sidewalks were owned by the postal service. So to say that inevitably we had to change the regulation, I think, is not consistent with the record in this case. It's not consistent with this court's decision because if this court thought we had to change the regulation, then the court, it would seem, would issue an order directing the district court to enter an injunction telling the postal service that it had to change its regulation. The court didn't do that. The court made a suggestion. So to say that inevitably the regulation had to be changed does not follow from this court's 2005 decision. And, again, I go back to the issue of change in conduct. Prevailing party, you must achieve some sort of change in conduct and something more than changing a regulation, which we could have, as I said, done in another manner by either posting the bulletin or exploring whether or not there was any chill to begin with from the regulation. So this position has sort of morphed as plaintiffs have sought attorney's fees. The change in conduct, based on today's argument, the change in conduct would be taking down what was in the post offices and putting up a replacement with the newly amended regulation that makes clear that that is conduct, right? That is conduct, but it's not the conduct they sought in bringing this case. They did not seek a change in a regulation bringing this case. It was certainly part of what they sought. I'm sorry? It was certainly part of what they sought. I don't know how the Court of Appeals could have granted that if it wasn't what they sought. It was an included portion. It wasn't everything they sought, to be sure. But they're not seeking fees for the unsuccessful later litigation on the broader question of whether a substantial portion of what remained covered rendered even more of the regulation invalid. They're not seeking those fees. Well, they're seeking fees on a lot they lost up to the 2005 decision, Your Honor. But nonetheless, that's not the way this case was framed and litigated, Your Honor, up through 2005, was that we're seeking to have this regulation changed. You seem to be saying that basically there was no – the Postal Service had already changed everything, and so there was nothing really to argue about in 2005. But obviously, this Court believed that there was an issue with regard to gray sidewalks. Otherwise, there would have been no point in the remand, correct? I see my time is up. Can I continue, Your Honor? Of course. We're not by any means suggesting that there was nothing left of the case in 2005. There absolutely was because, again, the regulation was being looked at as to how it applied to all exterior postal property. The plaintiffs were trying to get it set aside with respect to all exterior postal property. So this Court remanded the case to the District Court to determine whether or not there was a substantial number of postal property that constituted a public forum such that the regulation would be set aside. All of that was still very much in controversy. Okay. Or didn't this Court at least make a finding as to the Georgetown Post Office? The Georgetown Post Office was noted as an example, Your Honor, of where there is some gray sidewalk in front of the Georgetown. And you don't consider that to be a finding, though? Well, Your Honor, even if a findingóI mean, this Court in Thomas v. National Science Foundation specifically held that a finding that there has been unconstitutional conduct is not enough to accord prevailing party status. And the Supreme Court in Buchanan held the exact same thing. There has to be judicial relief. It's not enough simply to have a judicial finding that there is unconstitutional conduct. Okay. And so really what appellants are trying to argue is that this Court's decision is tantamount to a court order ordering us to change. But under Buchanan, there is no tantamount to a court order as part of the standard. Let me ask you about 03, because there the Court did order the publicationó I'm sorry, in which case? In 03. Oh, in 03. Sorry. Yes. But earlier. The Court there, though, did order the publication of that bulletin. Is that not the court imprimatur that we need for finding their prevailing party? That's a court order ordering the Postal Service to disseminate a document reflecting a position that the Postal Service had taken previously. That's not a change in the legal relationship between the parties. And, in fact, in their reply brief, they said the legal bulletin has no legal effect whatsoever. So how could the court ordering it to be disseminated in 2003 be really meaningful if appellants themselves say it had no legal effect? And the reason the court asked us to disseminate that, as you can see in the transcript, was the court wanted a comfort level that we were reiterating in writing to the postmasters what we had already represented was our position and what we told the court we had been advising postal managers in 2002 in terms of an application. But, again, Your Honor, we go back to the standards for prevailing party here. And the Supreme Court could not be clearer that there must be judicial relief order. And there simply was no, in this case, judicial relief order that required the Postal Service to change its conduct with respect to the merits of the claims that appellants brought in this case. If there are no further questions, we urge the court to affirm the district court's decision. All right. Thank you. Well, as usual, Mr. Spitzer, we used up all of your time. We'll give you two minutes. Thank you very much. I have a few very quick points. In terms of what we asked for, here's what we said in our amended complaint filed in December 2000. In the prayer for relief, we asked the court to declare that portion of 39 CFR 232.1H1, which prohibits soliciting signatures on petitions, polls, or surveys on USPS property, to be unconstitutional on its face and wholly void. So we certainly did ask for relief with respect to the regulation, not just with respect to enforcement. We asked that the regulation be declared unconstitutional on its face. Now, as applied challenge, on the next page, in the alternative, declaring that 39 CFR 232.1H1 is unconstitutional as enforced against plaintiffs. And in 2005, this court characterized our as applied challenge. In the opinion, it's on JA 89, they argued that the regulation, the plaintiffs argued that the regulation is unconstitutional on its face and as applied to their specific petitioning activities. So that's how this court characterized our as applied challenge. Number two, it's not at all clear that the Postal Service was not enforcing the regulation as published from 2002 until 2005. I don't recall Mr. Hintonak's declaration saying that they were advising postal managers not to enforce it. I take Ms. Braswell's word for it that he said so. But some kind of oral advice going out to postmasters is hardly going to be as effective as a change in the regulation, which is required by its own terms to be posted in a public place, a prominent place in every postal facility. I don't know what sort of oral advice Mr. Hintonak may have given to who, but there's no reason to believe that 34,000 postmasters knew and understood this change in enforcement policy. And finally, in terms of the standards for prevailing party, this court said in Massachusetts' fair share against the Law Enforcement Assistance Administration, which is cited in our brief, quote, a party who establishes an entitlement to relief on the merits of a claim is entitled to fees, even if the case is remanded to the agency for further action. That's just what we have here. That was a pre-Buckhannon case from 1985, but it's exactly the same thing that the Seventh Circuit articulated and enforced in the NRA case, that when the party has an entitlement to relief based on an appellate court's decision, the fact that there's a remand for further proceedings, which inevitably will result in that relief, is enough to make a party prevailing. Thank you very much. Thank you, counsel. The case will be submitted.
judges: Brown, Kavanaugh, Pillard